UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY ROUSE,

        Plaintiff,                             Case No. 1:08-cv-982

v.                                                  HON. JANET T. NEFF

MICHIGAN DEPARTMENT
OF STATE POLICE,

        Defendant.
_____/

## OPINION

Pending before the Court are Defendant's Renewed Motion for Judgment as a Matter of Law or for a New Trial and/or for Remittitur (Dkt 72)[1] and Plaintiff's Motion for Award of Attorney Fees, Costs and Interest Pursuant to the American with Disabilities Act (Dkt 69).[2] Plaintiff has also filed two Supplemental Motions for the award of attorney fees and costs (Dkts 88, 89).[3] Having fully considered the parties' motion briefs and supporting documentation, the Court determines that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d). The Court denies Defendant's Renewed Motion for Judgment as a Matter of Law or for a New Trial, grants remittitur to the statutory cap of $300,000, and grants Plaintiff's motions for attorney fees, costs and interest.

---

[1] Plaintiff has filed a Response (Dkt 81), and Defendant has filed a Reply (Dkt 82).

[2] Defendant has filed a Response (Dkt 78).

[3] Defendant has filed a Response (Dkt 90).

**I. Background**

This case was tried before a jury in April 2010; at the close of Plaintiff's proofs, the Court granted Defendant's motion for judgment as a matter of law as to Plaintiff's Elliot-Larsen Civil Rights Act weight discrimination claim and as to economic damages. The jury returned a verdict finding Defendant liable for discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a), on Plaintiff's claim that he was an otherwise qualified person who was intentionally discriminated against because Defendant perceived Plaintiff to be disabled in violation of Plaintiff's civil rights. The jury found compensatory damages of $426,000, consisting of $266,000 for past emotional distress and $166,000 for future emotional distress.

**II. Renewed Motion for Judgment as a Matter of Law or for a New Trial and/or for Remittitur**

A. Motion for Judgment as a Matter of Law or for a New Trial

1. Legal Standards

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

FED. R. CIV. P. 59(a). When reviewing a motion for a judgment as a matter of law based on insufficiency of the evidence, the court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury; rather, it must view the evidence in a light

most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. *Arban v. West Publ'g Corp.,* 345 F.3d 390, 400 (6th Cir. 2003); *Hall v. Consol. Freightways Corp. of Del.,* 337 F.3d 669, 672 (6th Cir. 2003). The motion should be granted "only if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ." *Karam v. Sagemark Consulting, Inc.,* 383 F.3d 421, 427 (6th Cir. 2004) (quoting *LaPerriere v. Int'l Union UAW,* 348 F.3d 127, 132 (6th Cir. 2003)).

If a party files a renewed motion for judgment as a matter of law after a jury verdict, the party may also include a request for a new trial under Rule 59. FED. R. CIV. P. 50(b). The court may allow judgment on the verdict, order a new trial or direct the entry of judgment as a matter of law. *Id.* The trial court may "grant a new trial on all or some of the issues … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). Under this standard, "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, Ohio,* 78 F.3d 1041, 1045-46 (6th Cir. 1996) (citations omitted); *accord Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 405 (6th Cir. 2006).

Unlike motions for a judgment as a matter of law, in ruling on a motion for new trial, the trial court must weigh the evidence and compare the opposing proofs. *McCombs v. Meijer, Inc.,* 395 F.3d 346, 352 (6th Cir. 2005); *Woodbridge v. Dahlberg,* 954 F.2d 1231, 1234 (6th Cir. 1992). Whether to grant a motion for new trial is within the broad discretion of the trial court. *Bell v.*

*Johnson,* 404 F.3d 997, 1002-03 (6th Cir. 2005). "The Supreme Court has noted that 'the authority of trial judges to grant new trials' pursuant to Rule 59(a) 'is large.'" *Id.* at 1002 (quoting *Gasperini v. Ctr. for the Humanities, Inc.,* 518 U.S. 415, 433 (1996). Nonetheless, the motion should be denied if the verdict is one that reasonably could have been reached, regardless whether different inferences and conclusions could have been drawn or other results are more reasonable. *Walker v. Bain,* 257 F.3d 660, 670 (6th Cir. 2001); *Woodbridge,* 954 F.2d at 1234.

2. Discussion

Plaintiff's claim of discrimination was premised on an allegation that Defendant "regarded" him as a person with a disability, 42 U.S.C. § 12102(1)(C) and § 12102(3).[4] To succeed on a regarded-as-disabled claim of discrimination, a plaintiff must show that:

> "(1) [an employer] mistakenly believes that [an employee] has a physical impairment that substantially limits one or more major life activities, or (2) [an employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more [of an employee's] major life activities."

*Gruener v. Ohio Cas. Ins. Co.,* 510 F.3d 661, 664 (6th Cir. 2008) (quoting *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999)). Defendant argues that because Plaintiff introduced no evidence showing that Defendant based its decision to release him upon a mistaken perception of disability, under either "regarded as" test, Defendant is entitled to judgment as a matter of law or a new trial.

With respect to the first prong, Defendant argues that it is undisputed that Defendant's decision to relieve Plaintiff of duty was based on Dr. Syrjamaki's medical evaluation and conclusion

---

[4]Recent amendments to the ADA do not apply to this case and are not at issue. *See Milholland v. Sumner County Bd. of Educ.,* 569 F.3d 562, 565-67 (6th Cir. 2009) (the 2008 ADA amendments do not apply retroactively).

that Plaintiff was permanently disabled. Defendant points to Dr. Syrjamaki's testimony and medical evaluation finding that Plaintiff was permanently disabled from performing seven essential job duties. Defendant contends that because the medical report completed by Dr. Syrjamaki determined Plaintiff to be permanently disabled from performing the essential functions of his position, Defendant was not "mistaken" in its belief that Plaintiff was disabled, and therefore Plaintiff's claim must fail.

Defendant's argument ignores ample evidence to the contrary, which clearly created a jury-submissible question. Other evidence called into question Dr. Syrjamaki's determination that Plaintiff was permanently disabled. First, Dr. Syrjamaki's report itself suggested that Plaintiff may, in fact, be able to perform the essential functions of his job:

> In general most of these impairments Mr. Rouse has functionally would be considered permanent. Obviously, if he lost a significant amount of weight he could have the potential ability to perform these essential functions of a lieutenant with the Michigan State Police.

(Jt. Trial Ex. 4, Dr. Syrjamaki's Independent Medical Evaluation (IME) at 4.) Additionally, Dr. Syrjamaki concluded that although Plaintiff certainly would not be able to fulfill the essential job functions of a lieutenant, "Lieutenant Rouse does not have any difficulties in his current position as an operations lieutenant, which is a sedentary job … ."

More importantly, as Plaintiff points out, the report from Dr. Syrjamaki contradicted the evaluation of Plaintiff's treating physician, Dr. Morrison, who concluded that Plaintiff had no medical restrictions and was able to perform all the essential functions of his job (Jt. Trial Ex. 2). Dr. Morrison testified that Plaintiff returned to work after his second hip surgery, did not report any difficulties in performing his job and had an excellent history of recovery (*see* Dkt 63, Morrison Dep. at 18, 20, 33-35).

5

Second, there was evidence that could call into question Defendant's reliance on an allegedly objective determination in relieving Plaintiff from duty. Detective First Lieutenant Pekrul testified as to her belief that Plaintiff was disabled, which prompted Defendant's request for the IME by Dr. Syrjamaki (Tr. 4/14/10 at 247, 260). Pekrul's belief was based on her perceptions and observations, such as that Plaintiff was out of breath at times, appeared to have difficulty walking at times, did not kneel as required during a firearm qualification exercise, and was parking in a handicap spot (Tr. 4/14/10 at 316-18, 320-22, 328, 335-39; Pl's. Ex. 12) . Nonetheless, Defendant's assistant human resources director, Debra Gilmore, testified that at the time of Dr. Morrison's certification, human resources was satisfied that Plaintiff was able to perform his job duties (Tr. 4/14/10 at 286).

Plaintiff's testimony at trial contradicted much of Detective Pekrul's perceptions of him, further supporting a conclusion that Defendant may have been mistaken that Plaintiff was permanently disabled. Plaintiff testified concerning his ability to perform the essential functions of his job, and contradicted Detective Pekrul's alleged observations and perceptions that he was having difficulties performing his work. He testified that he was able to kneel in the firearm qualification exercise, and that his parking permit was temporary (*see*, e.g., Tr. 4/13/10 at 129, 132-33, 135, 169-173).

In the face of the evidence underlying Dr. Syrjamaki's evaluation and conclusion, the jury could have reasonably concluded that Defendant mistakenly believed that Plaintiff had a physical impairment that substantially limited one or more major life activities or that Defendant mistakenly believed that an actual, non-limiting impairment (hip replacement), substantially limited one or more of Plaintiff's major life activities. Viewing the evidence in a light most favorable to Plaintiff, and giving Plaintiff the benefit of all reasonable inferences, there were disputed issues of fact concerning

the ultimate question, i.e., whether Defendant mistakenly regarded Plaintiff as disabled. Defendant acknowledges these essential factual disputes, including the contradictory medical reports and disputed observations of Plaintiff's colleagues (Def's. Am. Br. at 10). Defendant is not entitled to judgment as a matter of law.

Defendant additionally argues that Plaintiff failed to present evidence that Defendant regarded him as being unable to perform a "class of jobs or broad class of jobs" as required under the ADA (Def's. Reply at 5). *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491-92 (1999). Defendant contends that during trial, Plaintiff focused entirely on whether he was able to perform his particular job of Specialist Lieutenant and offered no testimony or other evidence purporting to show that Defendant regarded Plaintiff as restricted from performing a class of jobs or a broad range of jobs (*see* Def's. Am. Br. at 9).

The Court finds this argument unavailing. Defendant's argument undermines Defendant's own theory in this case, which was that Plaintiff was, in fact, permanently disabled pursuant to the ADA, at the time of his release from duty by Defendant. As Plaintiff points out, Defendant's entire argument was that Plaintiff was unable to perform the broad range of jobs as a Michigan State Police officer. Likewise, Dr. Syrjamaki's evaluation and testimony was that Plaintiff could not perform a full range of essential functions of a MSP lieutenant, not his particular job. The evidence showed that Defendant regarded Plaintiff as being substantially limited in the major life activity of working, i.e., unable to work in a class of jobs or broad range of jobs. *See id.* at 491 ("When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."). Defendant's

argument that Plaintiff failed to offer proofs on an issue of fact that Defendant has essentially maintained all along, is, at best, specious, and therefore is rejected.

For the same reasons, based on the evidence, a new trial is not warranted on the grounds that the jury verdict was against the great weight of the evidence. As noted above, there were directly opposing proofs on the ultimate issues to be decided. There was ample evidence to support the jury's verdict.

### B. Remittitur

#### 1. Statutory Cap

Defendant contends that under 42 U.S.C. § 1981a, Plaintiff's compensatory damages for mental and emotional distress are statutorily capped at $300,000. Plaintiff concedes this issue. Accordingly, Plaintiff's damages will be reduced to $300,000.

#### 2. Emotional Damages

The remaining question is whether Defendant is additionally entitled to remittitur on the grounds that an award of $300,000 is not supported by the evidence and "shocks the judicial conscience." A trial court "is sharply limited in its ability to remit a jury verdict." *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 905 (6th Cir. 2004). The "remittitur standard favors maintaining the award, '[u]nless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience, ... or (3) the result of a mistake.'" *Id.* (quoting *Bickel v. Korean Air Lines Co.,* 96 F.3d 151, 156 (6th Cir. 1996) (quotation omitted)).

"[D]amages for mental and emotional distress will not be presumed, and must be proven by 'competent evidence.'" *Moorer v. Baptist Mem'l Health Care Sys.,* 398 F.3d 469, 485 (6th Cir. 2005) (quoting *Turic v. Holland Hospitality, Inc.,* 85 F.3d 1211, 1215 (6th Cir. 1996) (citations and

internal quotations omitted). "However, emotional injury may be proved without medical support." *Id.* "'A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard.'" *Id.* (citation omitted).

Having presided over the trial in this case, and having reviewed the relevant testimony and other evidence, the Court concludes that a damages award of $300,000 is not excessive and is fully supported by the evidence. Defendant concedes that a claim of emotional damages may be based solely on a plaintiff's testimony, but Defendant argues that Plaintiff's allegations of emotional harm are vague and devoid of specific references to discernable injury to his emotional state. The Court disagrees. Plaintiff testified that he suffered severe emotional distress from being discharged by Defendant after having worked as a Michigan State Police officer for more than thirty years, and he "just felt like they threw [him] out like last week's trash" (Tr. 4/13/10 at 150-51). He also testified that the discharge caused him shame to the extent that he was unable to tell his elderly father, who also had been a Michigan State Police officer for many years, what had happened (*id.*). Plaintiff became depressed and began drinking alcohol (*id.* at 146-47, 149-150).

Additionally, Plaintiff's wife testified that he suffered severe emotional distress from his discharge and that being a Michigan State Police officer was her husband's life (Tr. 4/15/11 at 430-432. Her testimony detailed the change in Plaintiff following his discharge, including that he suffered from depression and that the discharge had negatively impacted their lives and Plaintiff's emotional well-being:

> He's been depressed. It's like he's half of a man. He has no motivation. He just -- he just finds it very hard to get up every day. He just doesn't really want to go on. He [sic] just really sad, depressed, very broken hearted.

(*id.* at 432.)

Defendant contends that since it is undisputed that Plaintiff became permanently disabled only two days after being relieved of duty, Plaintiff should be entitled to compensation for only those two days. However, as Plaintiff notes, the fact that Plaintiff was arguably unable to work thereafter, does not negate his ongoing emotional distress as a result of his discriminatory dismissal. Finally, Defendant's citation of damage awards in other cases under different circumstances is inapposite and does not warrant remittitur on the evidence in this case.

### III. Plaintiff's Motion for the Award of Attorney Fees, Costs and Interest Pursuant to the American with Disabilities Act

Plaintiff requests that this Court award attorney fees, costs and prejudgment interest, as contemplated by the ADA, in an amount of $78,488.86 (Dkt 69). Plaintiff's supplemental motion (Dkt 88) requests supplemental attorney fees of $3,700 for hours expended in responding to Defendant's Motion for Judgment as a Matter of Law or for New Trial (Dkts 72, 73, 80). Plaintiff has filed a second Supplemental Motion for Costs (Dkt 89) seeking $1,225 in expert witness fees, after receiving notice from Defendant that it would not pay for the deposition cross-examination of Plaintiff's treating physician expert. For the reasons that follow, the Court grants Plaintiff's Motion for attorney fees, costs and prejudgment interest, in the amounts of $78,488.86 (Dkt 69) and $3,700 (Dkt 88). The Court also grants Plaintiff's Supplemental Motion for Costs (Dkt 89) and awards Plaintiff reasonable expert witness fees of $1,225.

#### A. Attorney Fees, Costs and Prejudgment Interest

A court may award reasonable attorney fees, litigation expenses and costs to the prevailing party in a discrimination action under ADA:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and

costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205; *see also Hamlin v. Charter Twp. of Flint,* 165 F.3d 426, 437 (6th Cir. 1999). The Court must arrive at a reasonable fee, "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343, 349 (6th Cir. 2000) (citing *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 1999)).

The starting point for determining a reasonable fee is the "lodestar" calculation: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Jordan v. City of Cleveland,* 464 F.3d 584, 602 (6th Cir. 2006); *see Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) ("most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"). "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir. 2004).

Once the lodestar figure is determined, the court may consider other factors to adjust the award upward or downward to achieve a reasonable result. *Geier, supra* at 792. The Supreme Court has cited twelve factors[5] that may be relevant, although many of these factors are generally

---

[5]These factors, known as the "*Johnson* factors" are: "(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Geier,* 372 F.3d at 792; *see Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).

subsumed in the initial lodestar calculation. *Id.* The party seeking attorney fees bears the burden of documenting his entitlement to the award with evidence supporting the hours worked and rates claimed. *Gonter v. Hunt Valve Co., Inc.,* 510 F.3d 610, 617 (6th Cir. 2007); *Reed,* 179 F.3d at 472.

Plaintiff's motion for attorney fees is well-supported, and the Court finds the fees requested reasonable based on the above standards. Plaintiff's counsel competently litigated this case to a favorable conclusion, demonstrated by the jury verdict of $426,000 on Plaintiff's discrimination claim. The claims set forth were by no means straightforward and were more than capably presented to the jury by Plaintiff's lead trial attorney. For the reasons presented in Plaintiff's well-documented brief, the Court finds trial counsel's hourly rate of $200.00 and associate counsel's rate of $175.00 wholly appropriate based on their documented skill, reputation, and experience, and in keeping with the prevailing market rate for lawyers of comparable skill and experience. The Court has reviewed the documented number of hours expended by counsel on this matter and finds the amount of time and the overall fees requested reasonable, in light of the *Johnson* factors.

Defendant opposes the amount of fees requested on the grounds that Plaintiff is not entitled to recover fees for time spent on Plaintiff's weight discrimination claim, which was dismissed on Defendant's Rule 50 motion. Defendant relies on its formulaic calculation of Plaintiff's counsel's time spent throughout this case to attribute approximately half the time spent by Plaintiff's counsel to the weight discrimination claim (*see* Dkt 78 at 5). Defendant argues that according to its calculations, the award of fees should be reduced by $28,488.75. The Court finds such a reduction of fees unwarranted under the circumstances of this case.

As Plaintiff points out, such per se reductions are not required. The Sixth Circuit Court of Appeals has "repeatedly rejected mechanical reductions in fees based on the number of issues on

which a plaintiff has prevailed." *Deja Vu v. Metro. Gov't of Nashville & Davidson County, Tenn.,* 421 F.3d 417, 423 (6th Cir. 2005).

> "[A] court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced."

*Id.* (quoting *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1169 (6th Cir.1996) (citation omitted)). The weight and disability discrimination claims presented in this case were closely intertwined; they involved many of the same underlying facts and evidence; and both pertained to Plaintiff's ultimate release from duty, which was the basis for the damages awarded. Accordingly, the Court finds a reduction in fees unwarranted.

There is no dispute with regard to Plaintiff's request for costs and prejudgment interest. The Court finds the requested costs reasonable and necessary given the nature and complexity of this case and finds the amount of interest appropriate. Plaintiff is therefore awarded costs of $8,081.84 and prejudgment interest of $1,969.52.

B. Supplemental Costs for Expert Witness Fees

Plaintiff requests supplemental costs of $1,225 in expert witness fees, which Plaintiff billed to Defendant, and Defendant declined to pay. The fees at issue are specifically associated with Defendant's cross-examination time during the deposition of Plaintiff's expert witness, Dr. Morrison. Defendant opposes the award of these costs, arguing that the request, filed four months after Judgment was entered, was untimely, since under Rule 54(d) motions for fees and costs must be made within fourteen days of the entry of Judgment. The Court rejects this argument because Plaintiff's request is supplemental to his timely motion for fees and costs, and, moreover, Plaintiff

filed the supplemental request within approximately seven days of receiving Defendant's August 18, 2010 letter declining payment (Pl's. Suppl. Mot., Dkt 89, Ex. 1).

Defendant also challenges the expert witness fees on the grounds of reasonableness. "42 U.S.C. § 12205 allows Plaintiff to recover reasonable fees paid to expert witnesses." *Disabled Patriot of America v. Romulus Nights, Inc.,* No. Civ.A. 04CV60258DT, 2005 WL 3132206, at *3 (E.D. Mich. 2005) (unpublished opinion) (citing *Lovell v. Chandler,* 303 F.3d 1039 (9th Cir. 2002) cert. denied, 537 U.S. 1105 (2003)). Defendant points out that Plaintiff's original motion (Dkt 69) included $900 for Dr. Morrison's deposition. Defendant contends that an additional $1,225, which is based on $175 for every 15 minutes over one hour, is unreasonable for the time spent by Dr. Morrison in his *de benne esse* deposition, and is a windfall for him (Def's. Resp., Dkt 90 at 3 and Ex. A at 2). Defendant argues that this is particularly so given the nature of Dr. Morrison's testimony, in that he was not required to develop new opinions or undertake new medical tests of Plaintiff, but only about his past treatment of Plaintiff.

The Court disagrees. Given the nature of testimony and medical evidence, the costs for the video deposition testimony of Dr. Morrison are not unreasonable in light of the overall case and the disputed issues.

### IV. Conclusion

The claims in this case were by no means straightforward or simple given the underlying facts. The case was ably tried to conclusion by both parties. The Court denied Defendant's Motion to Dismiss. Upon the conclusion of Plaintiff's proofs at trial, on Defendant's Rule 50 motion, the Court dismissed Plaintiff's weight discrimination claim and denied any claim by Plaintiff for economic damages. The jury rendered a verdict in favor of Plaintiff on his disability discrimination

claim under the ADA, and awarded damages of $426,000, consisting of $266,000 for past emotional distress and $166,000 for future emotional distress.

The Court has carefully considered the parties' post-trial motions in light of the entire case and the evidence presented at trial. The Court grants in part and denies in part Defendant's Renewed Motion for Judgment as a Matter of Law or for a New Trial and/or for Remittitur (Dkt 72); judgment as a matter of law or for a new trial is denied, but remittitur is granted to the statutory cap of $300,000. The Court grants Plaintiff's Motion for the Award of Attorney Fees Costs and Interest Pursuant to the American with Disabilities Act (Dkt 69) in the amount of $78,488.86, which represents $68,437.50 in attorney fees, $8,081.84 in costs, and $1969.52 in prejudgment interest. The Court grants Plaintiff's Supplemental Motion for an Award of Attorney Fees (Dkt 88), in the amount of $3,700. The Court grants Plaintiff's Supplemental Motion for Costs (Dkt 89) and awards expert witness fees of $1225. Plaintiff is therefore awarded total attorney fees, costs and interest of $83,413.86.

An Order consistent with this Opinion will be entered.

DATED: September  7 , 2011                          /s/ Janet T. Neff
                                                    JANET T. NEFF
                                                    United States District Judge